IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Nos. 06-316-1 |
| | ) |
| VAL BYRD | ) |

O P I N I O N

DIAMOND, D.J.

Presently before the court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 filed by Val Byrd ("petitioner"). Because petitioner knowingly and voluntarily agreed to a valid and enforceable waiver of his right to file a §2255 motion attacking his conviction or sentence, his motion will be denied.[1]

On May 2, 2006, a grand jury returned a ninety-six count indictment at Criminal No. 06-316 against petitioner and 9 other individuals involved in a cocaine distribution conspiracy. Petitioner was charged at twelve of those counts as follows: (A) at Count 1 with conspiracy to distribute and to possess with

---

[1] Pursuant to Rule 8(a) of the Rules Governing §2255 Proceedings, the court finds that no evidentiary hearing on petitioner's motion is required. Where the record conclusively shows that a movant is not entitled to relief, the court may dismiss the motion based on the record without a hearing. See United States v. Nahodil, 36 F.3d. 323, 326 (3d Cir. 1994). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a §2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). In this case, for the reasons set forth in this opinion, the record affirmatively establishes as a matter of law that petitioner's claims for relief have been waived.

intent to distribute 5 kilograms or more of cocaine; (B) at Count 3 with possession with intent to distribute 500 grams or more of cocaine; (C) at Count 5 with attempt to possess with intent to distribute 5 kilograms or more of cocaine; and, (D) at Counts 8, 43-44, 53, 59, 66-67, 72 & 78 with using a communication facility to facilitate a narcotics conspiracy.

On August 29, 2007, petitioner, pursuant to a written plea agreement, entered a plea of guilty at Count One at Criminal No. 06-316, and, pursuant to the same plea agreement, waived his right to indictment and pled guilty to a one-count information at Criminal No. 07-309 charging him with possession of a firearm in furtherance of a drug trafficking crime.

Under the terms of the plea agreement, petitioner waived his right to take a direct appeal from his conviction or sentence, subject to several enumerated exceptions, and further waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction or sentence. Plea Agreement, ¶A12. The plea agreement also contained a provision providing that: "[a]t the time of sentencing ... or within 1 year of the imposition of sentence ... the United States Attorney may, in her discretion, file a motion pursuant to §5K1.1 of the Sentencing Guidelines ... or under Rule 35(b), Federal Rules of Criminal Procedure." Plea Agreement, ¶B6.

Petitioner was sentenced to a term of imprisonment of 120 months at Criminal No. 06-316, the statutory mandatory minimum sentence for that count, and 60 months at Criminal No. 07-309,

also the statutory mandatory minimum sentence for that count, which, also by statute, was required to be served consecutively to the term imposed at Criminal No. 06-316, for a total term of imprisonment of 180 months. Petitioner did not file a direct appeal from his judgment of conviction and sentence.

In accordance with the terms of the plea agreement, within one year of sentencing the government filed a motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The court granted the motion and petitioner's sentence was reduced to a term of imprisonment of 90 months, consisting of 60 months at Criminal No. 06-316 and 30 months at Criminal No. 07-309, to be served consecutively. Petitioner did not file a direct appeal from his amended judgment of conviction and sentence.

Petitioner subsequently filed the pending motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255,[2] in which he asserts two grounds for relief: (1) his counsel was ineffective in failing to obtain a mental evaluation for petitioner to be used at sentencing in support of a downward departure motion based on petitioner's mental condition; and, (2)

---

[2] Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). Relief under §2255 is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

AO 72
(Rev. 8/82)

- 3 -

his due process rights were violated because the government did not file a motion pursuant to U.S.S.G. §5K1.1 as agreed in the plea agreement.

The government has filed a response asking this court to enforce the provision of the parties' plea agreement by which petitioner waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction and sentence. Upon due consideration of petitioner's motion and the government's response, the court finds that petitioner knowingly and voluntarily waived his right to seek relief under §2255 and that his waiver of that right is valid and enforceable.

Petitioner in this case entered into a negotiated plea agreement with the United States Attorney for the Western District of Pennsylvania which contained a provision waiving his collateral attack rights. This waiver provision explicitly provides:

> "[Petitioner] further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

Plea Agreement, ¶A12.

The Court of Appeals for the Third Circuit has recognized that a defendant's waiver of his right to file a §2255 motion or other collateral proceeding attacking his conviction and sentence is enforceable "provided that [it is] entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir.

2008). Applying this standard, the court finds that petitioner's waiver of his collateral attack rights in this case is valid and enforceable.

First, the record establishes that petitioner's waiver of his collateral attack rights was knowing and voluntary. Because there is no allegation here that petitioner actually was misled into waiving his collateral attack rights, the court may determine whether the waiver was knowing and voluntary merely by looking to the written plea agreement itself as well as the change of plea colloquy. Mabry, 536 F.3d at 238.

Here, petitioner's collateral attack waiver, clearly set forth in the written plea agreement, is very broad and, unlike his direct appeal waiver, which explicitly preserved his right to take a direct appeal under certain enumerated circumstances, contains no exceptions, explicitly stating that petitioner "<u>waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.</u>" Plea Agreement, ¶A12. (emphasis added).

Moreover, a review of the plea colloquy establishes that petitioner plainly understood the waiver. Whether a defendant knowingly and voluntarily enters into a plea agreement containing a waiver turns on whether "the district court inform[ed] the defendant of, and determine[d] that the defendant underst[ood] the terms of any plea agreement provisions waiving the right ... to collaterally attack the sentence as Federal Rule Criminal

Procedure 11(b)(1)(N) requires." Mabry, 536 F.3d at 239.

Here, despite the fact that this court did not strictly adhere to Federal Rule of Criminal Procedure 11(b)(1)(N), which requires the court, not the government or defense counsel, to address the defendant in a plea hearing and inform him that he is waiving his right to appeal and to collaterally attack his sentence, the court nevertheless is satisfied that petitioner adequately understood the terms of the plea agreement waiving his collateral attack rights.

At the plea hearing, defendant acknowledged his signature on the plea letter, confirmed that he had read it and had discussed it with his attorney and affirmed under oath that he had signed it voluntarily. Plea Transcript at 23. The government then summarized the plea agreement and reviewed all of the agreement's terms, including the collateral attack waiver provision, specifically noting that petitioner "waives his right to file a motion to vacate sentence under Title 28 United States Code Section 2255, attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." Plea Transcript at 25. When the court asked petitioner whether he had any questions regarding the plea agreement, he stated under oath that he did not. Id. at 26.

Thus, despite the court's failure strictly to adhere to Fed. R. Crim. P. 11(b)(1)(N), petitioner cannot show that the court's error affected his substantial rights or precluded him from understanding the waiver. Instead, the record shows that

petitioner understood that by pleading guilty he was giving up his right to file a §2255 motion or any other collateral motion attacking his conviction or sentence, and that he gave up that right knowingly and voluntarily. See, United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (deficient plea colloquy did not preclude defendant from understanding that he had waived his appellate rights, and holding that the defendant's substantial rights were not affected).

Having determined that petitioner's waiver was knowing and voluntary, the court next must consider whether enforcement of that waiver, even if knowing and voluntary, would work a miscarriage of justice. Mabry, 536 F.3d at 237. "[A] court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice based on the record evidence before it." Id. at 237-38. This court is to use a common sense approach and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Mabry, 536 F.3d at 243.

Utilizing this approach, this court is satisfied that the enforcement of petitioner's knowing and voluntary waiver in this case would not work a miscarriage of justice. First, enforcement of the collateral attack waiver here would not bar petitioner from pursuing relief on any grounds expressly preserved in the plea agreement, as the collateral attack waiver agreed to by petitioner was broad and contained no exceptions. Plea Agreement, ¶A12

AO 72
(Rev. 8/82)

(emphasis added); see, United States v. Shedrick, 493 F.3d 292, 303 (3d Cir. 2007). Nor does petitioner argue that counsel was ineffective or coercive in negotiating the plea agreement that contained the collateral attack waiver provision. See, e.g., United States v. Wilson, 429 F.3d 455 (3d Cir. 2005)(stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice).

Finally, petitioner has not identified "any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack." Mabry, 536 F.2d at 243. Rather, both grounds for relief petitioner seeks to raise in his pending motion clearly are encompassed by the broad waiver of his collateral attack rights and otherwise are not substantial. See Mabry, 536 F.3d at 243.

The first ground for relief that petitioner wishes to advance is that his counsel, R. Damien Schorr, was ineffective in failing to obtain a mental evaluation of petitioner to be used at sentencing for a downward departure motion based on petitioner's mental condition. There would be no merit to such a claim.

In order to establish constitutionally ineffective assistance of counsel, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness;[3]

---

[3] An assessment of counsel's performance begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. Strickland, 466 U.S. at 689. The assessment of counsel's performance must be made without using the benefit of hindsight to second-guess tactical decisions made

AO 72
(Rev. 8/82)

and, (2) that the deficient performance actually prejudiced the defense.[4] Strickland v. Washington, 466 U.S. 668, 687 (1984).

In this case, petitioner would be unable to show either deficient performance or prejudice. First, it cannot be argued that petitioner's counsel was ineffective in not seeking a mental evaluation for petitioner when there simply was no evidence in the record supporting any need for such an examination for petitioner nor any basis for a viable downward departure motion based on mental condition.

The presentence report notes only that petitioner reportedly was diagnosed with paranoia in 2003 while incarcerated in state prison. (PSIR ¶58). Petitioner indicated that he remembered being prescribed medication and attending therapy while in prison. Id. Petitioner apparently was released from state prison on October 23, 2004 (PSIR ¶ 40), and there is no indication in the record suggesting that he was on any medication for psychological problems or that he attended therapy after his release.

In a sentencing memorandum filed prior to the sentencing hearing, petitioner's counsel reports that he had received records

---

by an attorney unless they are unreasonable. Id. at 690. The petitioner has the burden of overcoming the strong presumption that counsel was effective. Id. at 689.

[4] If deficient performance is established, the second prong of the Strickland analysis requires a showing that counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To satisfy this test, a petitioner must demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694.

from the Pennsylvania Department of Corrections, SCI-Greensburg, which had confirmed that petitioner was diagnosed with paranoia while in prison, for which he had been prescribed medication. Petitioner had advised his counsel that his psychological symptoms while incarcerated "were possibly a side effect of the medication he was taking for Hepatitis C."

Other than the diagnosis of paranoia while petitioner was incarcerated, however, there is absolutely no evidence in the record that petitioner suffered from any sort of mental or psychological problem necessitating a mental evaluation for the purpose of filing a downward departure motion, nor is there is any evidence that petitioner requested that his counsel seek such an evaluation. To the contrary, petitioner appears to have downplayed the paranoia diagnosis to his counsel by indicating it was just a side effect of medications he was taking for a physical impairment.

Under these circumstances, counsel's decision not to seek a mental health evaluation clearly was reasonable, particularly where there was no clear basis for a downward departure motion under either U.S.S.G. §5H1.3 for mental or emotional condition[5] or

---

[5] U.S.S.G. §5H1.3 recognizes that the specific offender characteristic of mental and emotional condition "may be relevant in determining whether a departure is warranted if [that characteristic], individually or in combination with other offender characteristics, is present to an unusual degree and distinguish[es] the case from the typical cases covered by the guidelines." Nothing in the record suggests that petitioner suffered from any mental or emotional condition to any degree let alone to such an unusual degree as to distinguish his case from typical cases covered by the guidelines.

U.S.S.G. §5K2.13 for diminished mental capacity.[6] In the absence of any arguable basis for a downward departure under either of these provisions, counsel's strategic decision not to incur the expense to procure a mental evaluation when the record supplied no basis for one clearly did not amount to deficient performance.

Even assuming there was a basis for a mental evaluation, however, and assuming further that a downward departure was warranted under either §§5H1.3 or 5K2.13, petitioner nevertheless would not be able to show prejudice from his counsel's failure to seek such a motion. Petitioner's guideline sentencing range in this case was 121-151 months. However, the statutory mandatory minimum sentences for the offenses to which he pled guilty were 120 months at Criminal No. 06-316, 21 U.S.C. §841(a)(1) and (b)(1)(A)(ii), and 60 months at Criminal No. 07-309, which, by statute had to be served consecutively. 18 U.S.C. §924(c)(1)(A)(i).

Petitioner received those statutory mandatory sentences. Accordingly, even a successful motion for downward departure would have had no effect on the sentence that petitioner ultimately

---

[6] Pursuant to U.S.S.G. §5K2.13, a downward departure may be warranted for diminished capacity if: (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and, (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. In this case, there is nothing in the presentence report to suggest that defendant had a significantly reduced mental capacity within the meaning of §5K2.13. And even if defendant could have established a significantly reduced mental capacity, he would not have been entitled to a §5K2.13 departure in any event as U.S.S.G. §5K2.13 expressly prohibits such departures if the significantly reduced mental capacity was caused by the voluntary use of drugs or alcohol, and the presentence report indicates that petitioner believed his drug usage contributed to his legal situation.

received, and petitioner therefore would not have suffered any prejudice from his counsel's failure to seek a downward departure motion even if one had been warranted.

As petitioner would not be able to establish either that his counsel's performance fell below an objective standard of reasonableness or prejudice, his first asserted ground for relief is without merit, and there will be no manifest injustice from enforcing the waiver provision to preclude him from pursuing it.

Petitioner's second asserted ground for relief is utterly frivolous. Petitioner alleges that the government violated his right to due process and breached the plea agreement by not filing a motion pursuant to §5K1.1 of the United States Sentencing Guidelines. However, the plea agreement explicitly provided that the United States Attorney, in her discretion, _may_ file _either_ a §5K1.1 motion at sentencing _or_ a motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure within a year of sentencing. Plea Agreement, ¶B6. The government in fact did file a Rule 35(b) motion within a year of sentencing, that motion was granted by this court, and petitioner received the benefit of that motion by having his sentence reduced by fifty-percent from a total of 180 months to a total of 90 months. Accordingly, defendant received the full benefit of his plea bargain.[7]

---

[7] It further should be emphasized that, in accordance with the express terms of the plea agreement, the government was not _required_ to file either a §5K1.1 motion or a Rule 35(b) motion in the first instance. Rather, the plea agreement placed sole discretion for that decision in the United States Attorney, and the agreement, which petitioner knowingly and voluntarily signed, explicitly stated that

As petitioner has failed to identify any nonfrivolous ground, not covered by the waiver, for a collateral attack," Mabry, 536 F.2d at 243, this court cannot find that enforcement of the collateral attack waiver would give rise to a miscarriage of justice in this case.

Accordingly, because petitioner knowingly and voluntarily agreed to waive his right to file a motion to vacate under §2255 or any other collateral proceeding attacking his conviction or sentence, and the enforcement of that waiver will not work a miscarriage of justice, this court concludes that petitioner's waiver of his collateral attack rights is enforceable. Petitioner's §2255 motion therefore will be denied.

Local Appellate Rule 22.2 of the United States Court of Appeals for the Third Circuit directs that when a final order denying a motion under §2255 is entered, a determination of whether a certificate of appealability should issue also shall be made. The issuance of a certificate of appealability is "[t]he primary means of separating meritorious from frivolous appeals." Barefoot v. Estelle, 463 U.S. 880, 893 (1983) (setting forth standards for certificate of probable cause).

---

"[petitioner] has no right to compel, require or expect that the United States will file such a motion." Plea Agreement, ¶B6. Accordingly, even had the government exercised its discretion not to file either type of motion, petitioner would have had no viable claim that the plea agreement had been breached nor that his due process rights were violated, absent an indication of bad faith or unconstitutional motive. See, e.g., United States v. Wilson, 367 Fed. Appx. 381 (3d Cir. 2010).

Congress has mandated that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). Where, as here, the court denies relief on procedural grounds, a petitioner is entitled to a certificate of appealability only if he can demonstrate both that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the court is correct in its procedural ruling. See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bivings v. Wakefield, 316 Fed. Appx. 177, 179 (3d Cir. 2009).

Here, the court is satisfied that no reasonable jurist would argue that petitioner's waiver of his collateral attack rights is not enforceable for the reasons outlined above. Slack, 529 U.S. at 484. Nor is it reasonably debatable that petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the court believes that a certificate of appealability should not issue in this case. See Santana v. United States, 98 F.3d 752, 757 (3d Cir. 1996).

An appropriate order will follow.

Date: January 29, 2013

Gustave Diamond
United States District Judge

cc: Troy Rivetti
Assistant U.S. Attorney

Val Byrd